UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD CLARK,

                Plaintiff,        Civil Action No. 18-12048
                                  Honorable Robert H. Cleland
                                  Magistrate Judge David R. Grand

v.

ANDREW SAUL, COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 17]**

Plaintiff Robert Clark ("Clark") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #14, #17), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence does not support the Administrative Law Judge's conclusion that Clark is not disabled under the Act from the onset date through February 15, 2015. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #17**) be **DENIED**, Clark's Motion for Summary Judgment (**Doc. #14**) be **GRANTED IN PART**, and that, under sentence four of 42

U.S.C. §405(g), the case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Background

Clark was 48 years old at the time of his alleged onset date of March 3, 2012. At 5'9" tall, he weighed approximately 175 pounds during the relevant time period. (Tr. 356). He received an education through eleventh grade. (Tr. 357). He reported previous work as a cook, painting car parts, plastic extruder operator, supervisor of plastics, assistant foreman of plastics, and, most recently, a roofer. (Tr. 70, 117, 357-58). On February 28, 2012, Clark fell 28 feet off a roof on which he was working. (Tr. 494). Among other injuries, he fractured multiple ribs and vertebrae, dislocated his right shoulder and suffered a "massive rotator cuff tear," and suffered a pneumothorax. (Tr. 495, 631-34, 637). As discussed below, over the next 18 months, Clark underwent extensive treatment for his injuries (particularly those to his shoulder), spent a few dozen days in the hospital (sometimes due to involuntary admissions), and attempted suicide. Thereafter, on September 4, 2013, Clark filed his application for DIB and SSI, alleging disability due to the aforementioned problems, as well as arthritis in his hips and back, and mental impairments. (Tr. 356).

Clark's applications for DIB and SSI were denied at the initial level in November 2013 (Tr. 127-52), after which he timely requested an administrative hearing, which was held on February 5, 2015 before ALJ Kathleen Eiler. (Tr. 52-75). Clark appeared *pro se* before ALJ Eiler. (*Id.*). On December 3, 2015, ALJ Eiler issued a written decision finding that Clark is not disabled under the Act. (Tr. 153-175). Clark retained counsel, who filed a request for review of ALJ Eiler's denial, and on June 30, 2016, the Appeals Council denied review. (Tr. 176-78). Clark then filed a formal motion to reopen the Appeals Council's decision (Tr. 415-38), and on April 20, 2017, the

Appeals Council vacated ALJ Eiler's decision and remanded the matter, explaining:

> The hearing decision finds, Finding 5, that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(b), except that the claimant, amongst other limitations, is limited to "minimal, superficial interaction with the general public." The phrase "minimal, superficial interaction" is vague and does not sufficiently describe the claimant's mental residual functional capacity. The decision must indicate whether the individual can perform the work-related mental activities generally required by competitive remunerative work, i.e., the abilities to: understand, carry out, and remember instructions; use judgment in making work related decisions; respond appropriately to supervision, coworkers, and work situations; and accommodate changes in a routine work setting (20 CFR 404.1545(c) and 416.945(c) and Social Security Rulings 85-16 and 96-8p).
>
> New evidence submitted with the request for review suggests additional loss of functionality due to impairments associated with the claimant's lumbar spine and hips. X-rays taken on February 16, 2015 revealed severe degenerative disc disease at the L4-5 level as well as narrowing joint space of the left hip and possible early avascular necrosis of the right femoral head, and the claimant was observed with stiffness in the lumbar spine and bilateral hip stiffness, much more on the left side. On February 12, 2016, Brian de Beaublean, M.D., a treating physician, noted that he did not think that continuing physical therapy or proceeding with conservative treatment would be beneficial and scheduled the claimant for a left hip total replacement. This new evidence of the claimant's impairments warrants consideration on remand.

(Tr. 181-83). The Appeals Council also ordered the ALJ on remand to, "[o]btain additional evidence concerning claimant's medically determinable impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence," to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the asserted limitations," and, finally, "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. . ." (Tr. 182). Per Clark's brief, by the time the matter was remanded, ALJ Eiler had been transferred to a new location and the matter

was assigned to ALJ Sarah Zimmerman (hereafter, the "ALJ"). (Doc. #14 at 5). The ALJ then set a hearing date of September 8, 2017.

On Friday September 1, 2017, one full week before the September 8th hearing date, but – due to the intervening Labor Day holiday – one business day short of the Regulations' "five business day" requirement, Clark's counsel (who still represents him in his instant appeal) submitted a letter to the ALJ, along with certain medical records, and an 18-page detailed summary of the medical evidence of record. (Tr. 467-93). Counsel also indicated that he was awaiting medical evidence from five providers which he described as "critically important to this claim," and requested "additional time of thirty days to complete the record or, in failing that, that the matter be adjourned for a period to allow us to obtain these records." (Tr. 467-68).

Despite this request, the hearing before the ALJ was held a week later on September 8, 2017. At the hearing, the ALJ stated that she reviewed only the first page of counsel's September 1, 2017 letter, and that she "stopped with the first page" and did not examine any of the accompanying evidence because the first page of the letter did not, in her opinion, "have a reason for the lateness that [she] felt fell within one of the exceptions . . ." (Tr. 80-81). For the same reason, the ALJ denied Clark's request to adjourn the hearing so that he could obtain additional records. (Tr. 84-85, 468). Ultimately, the ALJ stated that she would take under advisement the decision of whether to admit Clark's late-submitted evidence. (Tr. 82). She then heard the testimony of Clark, vocational expert ("VE") Susan Roe, and Clark's girlfriend, Annette Butterfield. (Tr. 76-126).

On October 23, 2017, the ALJ issued a partially favorable decision, finding that beginning on February 16, 2015, Clark was disabled, but that he was not disabled prior to that date. (Tr. 31-33). In her decision, the ALJ wrote that she was "declin[ing] to admit the evidence submitted [less

4

than] [sic] five business days prior to the hearing." (Tr. 18-19). On April 30, 2018, the Appeals Council denied review. (Tr. 1-3). Clark timely filed for judicial review of the final decision on June 29, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Clark's medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

5

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that from the alleged onset date of March 3, 2012 through February 15, 2015, Clark was not disabled under the Act, but that Clark became disabled on February 16, 2015. At Step One, the ALJ found that Clark has not engaged in substantial gainful activity since March 3, 2012. At Step Two, the ALJ found that at all times since his alleged onset date, Clark had the following severe impairments: right shoulder dislocation and rotator cuff tear status post repair; degenerative disc disease of the lumbar spine and cervical spine; degenerative joint disease of the bilateral hips; affective disorder; anxiety; substance use disorder; and obesity. (Tr. 22). Beginning on the established onset date of disability – February 16, 2015 – the ALJ found that Clark had the additional severe impairment of osteonecrosis of the bilateral hips. (*Id.*). At Step Three, the ALJ found that Clark's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Clark's residual functional capacity ("RFC"), concluding that from the alleged onset date through February 15, 2015, he had the residual functional capacity to perform light work, except with the following restrictions: Clark could stand or walk for three hours and sit for six hours during an eight-hour workday. (Tr. 24). He should have been able to change position for one or two minutes constantly, and reach overhead with his right upper

6

extremity. (*Id.*). He could occasionally push, pull, or operate foot controls with the bilateral lower extremities, occasionally climb stairs and ramps but never climb ladders, ropes, or scaffolds. (*Id.*). He could occasionally stoop and kneel, but never crouch or crawl. (*Id.*). He could never have been exposed to hazardous heights, dangerous machinery, extreme cold, or excessive vibration. (*Id.*). He was unable to work at a production rate pace such as on an assembly line, could only have occasional interaction with supervisors and coworkers, and could be in the vicinity of, but could only interact with, the public 10% of the workday. (*Id.*). He was able to carry out simple instructions. (*Id.*).

However, beginning on February 16, 2015, the ALJ determined that Clark's RFC became more restricted. Specifically, she determined that as of February 16, 2015, Clark had the residual functional capacity to perform light work, except that Clark can stand or walk for three hours and sit for three hours in an eight-hour workday. (Tr. 29-30). He is unable to ambulate one block over uneven ground and should be able to change position for one to two minutes after every 45 minutes while remaining on task. (Tr. 30). He can frequently, but not constantly, reach overhead with his right upper extremity, can occasionally push, pull, or operate foot controls with the bilateral lower extremities. (*Id.*). He can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds, can occasionally stoop and kneel, but can never crouch or crawl. (*Id.*). He can never be exposed to hazardous heights, dangerous machinery, extreme cold, or excessive vibration. (*Id.*). He is unable to work at a production rate pace such as on an assembly line. (*Id.*). He can have occasional interaction with supervisors and coworkers, and he may be in the vicinity of, but may only interact with, the public 10% of the workday, and is able to carry out simple instructions. (*Id.*).

At Step Four, the ALJ found that the transferability of job skills is not material to the

determination of disability, as the framework supports a finding that Clark is "not disabled" whether or not he has transferable job skills. (Tr. 32). She found that beginning on February 16, 2015, Clark has not been able to transfer job skills from other occupations. (*Id*.). Further, the ALJ found that before February 16, 2015, there were jobs that existed in significant numbers in the national economy that Clark could have performed. (*Id*.). But, the ALJ found that beginning on February 16, 2015, there were no jobs that exist in significant numbers in the national economy that Clark could have performed. (Tr. 33). Accordingly the ALJ found that Clark was not disabled between the alleged onset date and February 15, 2015, but that he became disabled on February 16, 2015, and continued to be disabled through the date of her decision. (*Id*.).

    **C.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13;

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.     Analysis**

In his motion for summary judgment, Clark argues that the ALJ erred in: (1) refusing to admit into evidence his "counsel's letter brief and [] attached medical records" due to it being submitted only four business days prior to the hearing, rather than five; (2) failing to follow the Appeals Council's directive to obtain and consider additional medical records; (3) making a disability decision with respect to the period from the alleged onset date through the date she found Clark to be disabled – February 16, 2015 – that was "contrary to the great weight of [the] evidence]"; and (4) asking hypothetical questions of the VE that did not accurately reflect his capabilities. For the reasons stated below, the Court agrees with Clark that remand is warranted.

*1.     The ALJ Erred in Her Handling of Clark's Pre-Hearing Submission*

Clark first argues that the ALJ erred in her handling of his pre-hearing submission. The Court agrees.

On Friday September 1, 2017, Clark's counsel submitted to the ALJ for her review and

9

consideration in connection with Clark's applications a letter, a lengthy brief summarizing the medical evidence, and certain medical records. (Tr. 467-493). Counsel also indicated that he was "trying to complete the medical evidence of record, but has not yet received [certain specified records], which are of critical importance to this claim . . . We hereby request that we be provided with additional time of thirty days to complete the record or, in failing that, that the matter be adjourned for a period to allow us to obtain these records." (Tr. 467-68). While counsel's September 1, 2018 letter was submitted a full seven calendar days before the September 8th hearing date, that was only four business days before the hearing because the Labor Day holiday fell in between, on Monday, September 4th. The ALJ refused to admit Clark's documents and refused his request for an adjournment to obtain additional evidence, explaining:

> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned [ALJ] declines to admit this evidence because the requirements of 20 CFR 404.935(b) are not met. The representative argued that the evidence submitted less than five business days before the hearing only fell outside the five-business day requirement due to the Labor Day holiday. The representative was put on notice and given ample time to gather and submit evidence when the Appeals Council issued the Order dated, April 20, 2017, and when the Notice of Hearing, dated June 5, 2017 was sent to his office . . . The representative did not provide an explanation that met the criteria for any of the exceptions set forth under 20 CFR 404.935(b). Therefore, the undersigned declines to admit the evidence submitted five days [sic] prior to the hearing.

(Tr. 18; *see also* (Tr. 84-85, denying the request to adjourn the hearing).

At the time of Clark's hearing, 20 C.F.R. § 404.935, entitled "Submitting written evidence to an administrative law judge," provided:

> (a) When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law

10

> judge *may* decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.
>
> (b) If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge *will* accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
>> (1) Our action misled you;
>>
>> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>>
>> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>>
>>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>>>
>>> (ii) There was a death or serious illness in your immediate family;
>>>
>>> (iii) Important records were destroyed or damaged by fire or other accidental cause; or
>>>
>>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935 (emphasis added).

Here, the ALJ's refusal to admit the evidence or consider Clark's request for an adjournment did not constitute a proper exercise of her discretion. First, the ALJ seemed to misunderstand that notwithstanding Clark's failure to satisfy the subsection (b) criteria, she retained the discretion to admit the evidence in question and consider his request for an adjournment. In writing that "The undersigned [ALJ] declines to admit this evidence **because the requirements of 20 CFR 404.935(b) are not met**" and "The representative did not provide an

11

explanation that met the criteria for any of the exceptions set forth **under 20 CFR 404.935(b)**. **Therefore**, the undersigned declines to admit the evidence," the ALJ essentially read the discretion given to her in subsection (a) out of the regulation. (Tr. 18). Indeed, her discussion of the regulation makes no mention of the discretion she has under subsection (a). (*Id.*). In short, the ALJ treated subsection (a) as if it said, "If you do not comply with this requirement, the administrative law judge *will* decline to consider or obtain the evidence, unless [subsection (b) is satisfied]." But that is not how the regulation reads, and a claimant who fails to satisfy the subsection (b) criteria is still entitled to separate consideration as to whether the ALJ should exercise the discretion given to her under subsection (a). For instance, the ALJ could have considered that the documents in question were submitted a full seven days before the hearing date. She could have considered how, if at all, the timing of Clark's submission, and the volume and nature of the evidence, impacted her ability to be prepared for the hearing.[1] She could have considered that there appears to be no evidence of bad faith on the part of Clark or his counsel in the timing of the submission, and that instead, the issue was an inadvertent mistake related to an intervening federal holiday. (Doc. #18 at 3). Further, the ALJ could have, and should have, taken into consideration the case's procedural history, the significance of the evidence in question, and the issues at stake. The case was before the ALJ because the Appeals Council ordered a remand to "[o]btain additional evidence concerning [Clark's] medically determinable impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence." (Tr. 182). It appears that, at least with respect to the underlying medical records Clark sought to submit (and those for which he sought

---

[1] And, if the nature or volume of the evidence was such that the ALJ did not have sufficient time to review it in advance of the hearing, she could have granted Clark's request for an adjournment of the hearing.

an adjournment to obtain, which he characterized as "of critical importance to this claim"), Clark was abiding by the Appeals Council's directive. (Tr. 467).

Moreover, the ALJ could have considered that, while the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, social security proceedings are "inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), and that an ALJ has an affirmative duty to develop the factual record upon which her decision rests. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971) (recognizing that the responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge)).

In sum, by disallowing the evidence submitted seven days before the hearing, and denying Clark's request for an adjournment to obtain additional medical records without offering a proper explanation as to why she was declining to exercise the discretion given to her in subsection (a) of the applicable regulation, the ALJ acted in a manner inconsistent with the Appeals Council's mandate and her duty to develop the record. She therefore abused her discretion.

The Commissioner seems to argue that the ALJ's handling of the situation was at worst harmless error because, "[u]ltimately, although the ALJ did not admit Plaintiff's counsel's brief and medical summary into the record (Tr. 467-93), she did admit and consider the enclosed medical evidence, i.e., "the medical records of the Saginaw County Community Mental Health Authority for the period 3/9/2016 through 8/15/2017" (totaling 120 pages). (Tr. 471, 1645-1764)." (Doc. #17 at 11). However, it is not clear that this is correct, and the Commissioner does not point to any particular page of the ALJ's decision which demonstrates that she considered any of these records. Second, Clark represents that "none of the records proffered by [his] counsel at the hearing or at the ALJ level are included in the 367 pages of new evidence relied upon by [the

13

Commissioner]." (Doc. #18 at 5; *cf.* Doc. #17 at 14-15). Third, the Commissioner's argument does not address the ALJ's denial of Clark's request for an "additional time of thirty days to complete the record." (Tr. 468). Indeed, based on the ALJ's comments at the hearing, she apparently was unaware of this request until counsel raised it at the hearing.[2] (Tr. 80-81, 84-85, 468).

For all of these reasons, the ALJ abused her discretion with regard to the evidence in question and Clark's request for an adjournment so that he could obtain specific additional evidence in support of his claim.

> 2. *The Court Cannot Find that Substantial Evidence Supports the ALJ's Conclusion that Clark was Not Disabled for Any 12-Month Period after His Alleged Onset Date*

Clark argues that the ALJ made a disability decision with respect to the period from his alleged onset date (March 3, 2012) through the date she found Clark to be disabled – February 16, 2015 – that was "contrary to the great weight of [the] evidence]". While "contrary to the great weight of the evidence" is not the proper standard – indeed, this Court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ," *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) – Clark's overarching argument that the ALJ's analysis is not supported by substantial evidence has merit, at least with respect to the 12-plus month period of time immediately following his alleged onset date.

By way of background, medical records establish that Clark had experienced depression and anxiety prior to his alleged disability onset date, but that these conditions were largely

---

[2] At the hearing, counsel asserted that the request was "on the first page" of his letter. (Tr. 85). In reality, the specific request for an adjournment appears on the second page of his letter, which the ALJ said she did not read prior to the hearing. (Tr. 80-81, 468).

controlled with medication. (Tr. 563, 565, 572). Indeed, medical records from shortly before Clark's February 28, 2012 fall indicate that he was enjoying working full time. (Tr. 563, 572). This is important because numerous records subsequent to his fall suggest that it was his inability to work thereafter that led to his severe depression – something the ALJ never discussed. For example, just six weeks after his fall, Clark was admitted (initially involuntarily, and then for an additional voluntary period) at McLaren Bay hospital's psychiatric department after advising a therapist of his plans to kill himself, and was discharged on April 23, 2012. (Tr. 850-55). One of the notes regarding this hospital stay indicates that Clark's "current depression has been ongoing for the past few weeks and apparently [he] has been struggling with feelings of hopelessness, helplessness, and worthlessness." (Tr. 852). This same note indicates that he had been sober for eight months prior to his fall, and had never previously contemplated suicide, or been hospitalized on account of his mental impairments. (*Id.*).

However, slightly more than a year after his alleged onset date, Clark was still suffering from "extreme, severe depression,"[3] which he related to the fall and his inability to work thereafter. (*See, e.g.*, Tr. 837 (Clark complained of feeling "completely useless" since his fall, and that he was "feeling terrible" about not being able to pay child support for his son); Tr. 740 ("depression since accident a year ago left him unable to work.")). This depression led Clark to not only have suicidal ideations, but to attempt suicide. (Tr. 731 ("intentional overdose"). It also led to numerous hospitalizations. In fact, during the approximate 22-month period following his February 28, 2012 fall, Clark spent 59 days in the hospital—an average of almost three days per month. (Doc. #14 at 38). The VE testified, "[i]n my experience, in dealing with employers, if you're absent two or

---

[3] Around the same time, another treating physician diagnosed Clark with "acute major depression." (Tr. 738). Still another physician who saw Clark around the same time diagnosed him with "major depressive disorder." (Tr. 850).

more days per month, and again, month after month, you would eventually lose your job." (Tr. 122). At least with respect to the 22-month period referenced above, the ALJ erred in not specifically addressing the impact Clark's frequent hospitalizations and his numerous other medical visits would have on his ability to maintain full-time employment. As the Honorable Bernard A. Friedman recently explained:

> . . . the RFC evaluation in this matter is flawed because the ALJ neglected to make any findings as to whether plaintiff's frequent medical appointments prevent him (or prevented him during any consecutive twelve-month period) from working on a full-time basis. As this Court has previously stated, the ALJ must consider such "absenteeism" in evaluating a claimant's RFC:
>
>> According to Social Security Ruling 96-8p, an ALJ assesses a claimant's residual functional capacity ("RFC"), or the claimant's ability to perform "sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." In making this determination, the Commissioner must take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded. . . .
>
> *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-CV-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017). *See also Reed-Barnes v. Comm'r of Soc. Sec.*, No. 2:17-CV-12313, 2018 WL 1586486, at *4 (E.D. Mich. Apr. 2, 2018) (remanding for further proceedings because the ALJ neglected to make findings as to whether plaintiff's multiple hospitalizations "show a level of absenteeism that would prevent plaintiff from maintaining full time employment"); *Sampson v. Comm'r of Soc. Sec.*, No. 16-CV-14362, 2017 WL 5054271, at *2 (E.D. Mich. July 14, 2017) (remanding for further proceedings because the ALJ neglected "to consider whether plaintiff was employable during the 22-month period in question ... due to the amount of time he spent in the hospital, at home recuperating after his hospital stays, and engaging in cardiac rehabilitation").
>
> In the present case, the record reveals that following his rollover accident in December 2014 plaintiff spent a great deal of time attending appointments with various physicians, physical therapists, and others for treatment,

16

> evaluation, and testing. . . . On remand, the ALJ must make findings regarding the frequency of plaintiff's absenteeism due to these appointments (and any others the Court may have overlooked) and incorporate these findings in revised hypothetical question(s) to the VE to determine whether work exists in significant numbers that a person with plaintiff's RFC and absenteeism due to medical appointments could perform.

*Smith v. Comm'r of Soc. Sec.*, No. 18-CV-13501, 2019 WL 2122957, at *3-6 (E.D. Mich. May 15, 2019).

As in *Smith*, the ALJ here failed to adequately consider whether, in light of the VE's testimony and the nature and number of medical appointments and hospitalizations Clark had following his February 28, 2012 fall, he would have been able to perform ongoing, full-time work. Accordingly, the Court cannot find that substantial evidence supports the ALJ's determination that Clark was not disabled for any 12-plus month period after his alleged onset date. The ALJ should expressly consider this issue on remand. Relatedly, the ALJ should expressly consider the impact that Clark's numerous hospitalizations and suicide attempts had on the "paragraph B" criteria regarding a claimant's limitation in adapting and managing oneself. (Tr. 24).

Clark also raises questions about the ALJ's handling of his physical impairments, focusing particularly on his right shoulder. While the Court need not address this argument in light of its above recommendation, the record raises serious questions about Clark's ability to use his right arm during at least the initial twelve-plus month period following Clark's March 3, 2012 alleged onset date. To this end, the Court notes that although Clark's shoulder dislocation was diagnosed at the time of his February 28, 2012 fall (Tr. 495), it was not until Clark underwent a June 13, 2012 MRI (because his severe pain had not improved) that doctors realized he had also suffered a "[l]arge full thickness tear involving the posterior two-thirds of the supraspinatus and infraspinatus tendons. . . small effusion in the shoulder joint extending into subacromial subdeltoid bursa . . . Hill-Sachs defect with subchrondral marrow edema in the posterolateral greater tuberosity." (Tr.

17

596, 652). Clark underwent surgery for rotator cuff repair on October 11, 2012, which was about 7½ months after his alleged onset date. (Tr. 741-42). In a record from a few weeks after his surgery, it was noted that it would be a "good 4-5 months before [Clark's shoulder would be] completely healed." (Tr. 688). And, about two-months post-surgery, it was noted that Clark was "just starting to be able to raise [his right] arm against gravity," that "[h]e does everything with [his] left, no lifting with right arm at all," and that "dressing, reaching, house chores are all difficult." (Tr. 765). Indeed, a medical practitioner instructed Clark at this time – more than nine months after his fall – that he was "not to move [his] arm" at all. (Tr. 690).

Yet the ALJ cited this very same post-surgery record as a principal basis for discounting a physician-imposed 5-pound lifting restriction, noting that this post-surgery record showed Clark had 5/5 "grip strength." (Tr. 26, 690, 1105). Since Clark could not even use his arm at all at this time, the ALJ's decision in this regard is not supported by substantial evidence; in other words, full grip strength does not necessarily translate into an ability to lift.

The other records on which the ALJ relied for discounting the physician-imposed lifting limitations also fail to provide substantial evidence for the ALJ's decision. First, they were from well more than one year after Clark's alleged onset date, and thus do not necessarily speak to Clark's lifting abilities during the initial twelve-plus month period of time following his alleged onset date. Second, in imposing a 5-pound lifting restriction, the doctor indicated that Clark was still experiencing limited range of motion in his right shoulder, with "significant weakness" in that shoulder's abduction and external rotation, and that he had positive "shoulder impingement tests including Neer's and Hawkins . . ." (Tr. 1104). While the ALJ did mention some of these findings in her decision, she did not actually reconcile them in a way that explains why they do not support the limitation imposed by the doctor. (Tr. 26). Accordingly, the Court cannot find that the ALJ's

18

decision to discount the physician-imposed lifting restriction is supported by substantial evidence.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is not supported by substantial evidence, and this matter should be remanded[4] for further consideration consistent with this Report and Recommendation.

### III. CONCLUSION

For all of the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #17**) be **DENIED**, Clark's Motion for Summary Judgment (**Doc. #14**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.


Dated: June 28, 2019　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985);

---

[4] Contrary to Clark's argument (Doc. #14 at 34), the circumstances here do not warrant remanding this matter to an ALJ other than ALJ Zimmerman. Although ALJ Zimmerman did not properly utilize her discretion with respect to Clark's proffered evidence and request for an adjournment, *see supra* at 9-14, she did not display any improper bias against Clark or his counsel. Perhaps the best evidence of this is that ALJ Zimmerman found Clark to be disabled as of February 16, 2015. (Tr. 33).

*Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Cleland:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 28, 2019.

                                         s/Eddrey O. Butts
                                         EDDREY O. BUTTS
                                         Case Manager